DAVID NELSON AND NANCY NELSON *v.* JOHN BUTCHER
AND VIRGINIA BUTCHER.

[No. 2-474A87.  Filed July 27, 1976.  Rehearing denied August 30, 1976.
Transfer denied November 19, 1976.]

*Joseph H. Davis, Lawrence R. Murrell, Fell, Davis & Murrell,* of Kokomo, for appellants.

*Edward S. Mahoney, O'Mahoney, Mahoney, Simmons & Fleming,* of Kokomo, for appellees.

### STATEMENT OF THE CASE

LOWDERMILK, J.—This case was transferred from the Second District to this office on July 1, 1976, in order to lessen the disparity in caseloads among the Districts.

Defendants-appellants David and Nancy Nelson (Nelsons) appeal from a judgment awarding possession of real estate of which they were purchasers under a conditional sales contract to plaintiffs-appellees John and Virginia Butcher (Butchers), and denying their prayer for damages on their counterclaim.

We reverse.

## FACTS

The facts necessary for our disposition of this appeal are as follows: On June 11, 1966, the Butchers entered into a contract to sell certain described real estate to the Nelsons. The pertinent provisions of this contract are set forth *infra:*

### "ARTICLES OF AGREEMENT

1. In consideration of the sum of $9,900 to be paid as hereinafter set out with interest at 7% per cent per annum on the unpaid balance, John Butcher and Virginia Butcher husband and wife hereinafter designated as the Owner, agrees to sell to David Nelson and Nancy Nelson, husband and wife, hereinafter designated as the purchaser, upon compliance with the conditions herein contained, real estate described as follows: Subject to survey at time of signing of deed. Property known as 1009 S. Purdum.

2. The purchaser agrees to buy said real estate, and to pay the purchase price as follows: $400.00 on the date of this agreement, receipt thereof is acknowledged, and the balance of $9,500.00 as follows: $85.00 per month P.I.

3. *The first monthly payment shall be payable Aug. 11, 1966, and one on the same date of each month thereafter until paid in full.* The monthly payment includes interest and principal. The Purchaser may pay any greater amount than herein required, including the entire balance, without penalty and interest shall cease as to such payments. *Time of payment is of the essence of this Contract.*

4. The Purchaser is entitled to possession on the 10th day of July, 1966, to continue so long as he performs the conditions herein. *Purchaser agrees to pay all Taxes beginning with the installment of Taxes due and payable in Spring 66 due 67 of 19—* and all assessments of any kind after this date. *Purchaser agrees to keep the property insured under fire and Extended coverage in a Policy acceptable to the owner in the amount of $10,000.00 payable as the interests of the parties may appear, and to deliver said policy to the Owner until such purchase price is paid in full. Time of payment is of the essence of this Contract.*

5. Title to said real estate shall remain in the Owner until this contract shall have been fully performed, no right, title or interest in said real estate, or in any improvements thereon, legal or equitable, shall pass to the purchaser by virtue of this agreement, until all terms and conditions shall have been performed.

6. *The Purchaser shall use said premises well and shall keep them in good repair and shall commit no waste thereon.* In the event of any re-entry by the Owner, the Purchaser shall deliver the premises in good condition as same are now in or may be put in, reasonable wear and tear and acts of God and public authorities excepted. The Owner reserves the right at reasonable time to inspect said premises during the term of this contract.

7. The Owner agrees to furnish an abstract of title showing merchantable fee simple title or insurance title in the Owner within —— days of this date, unless it shall have been previously done. The Purchaser shall have —— days in which to examine said abstract, at the end of said period, title shall be conclusively presumed acceptable, unless within said period, Purchaser shall deliver objections to title in writing to the Owner. The Owner shall have —— days to perform such acts as are necessary to vest merchantable fee simple title in himself; if he is unable to do so for any reason, this contract shall be void and all payments refunded. No further continuation of the abstract by the Owner shall be required.

\* \* \*

11. If the Purchaser fails to pay any installment of the purchase price or interest thereon, or any installment of taxes on the real estate, or public assessment, or any premium of insurance, as the same become due and payable, and if such failure continues for a period of 60 days, or if the Purchaser fails to perform or observe any condition or term of this agreement and such default continues for a period of 60 days, the Owner may cancel this agreement, take immediate possession, and remove the Purchaser or those holding under him, without further notice or demand whatsoever, notice and demand being expressly waived by the Purchaser, and in the event of cancellation all payments theretofore made by the Purchaser, including the payment on this date, shall be retained by the Owner not as a penalty but as liquidated damages for the breach of this agreement, said damages being uncertain and difficult of measurement; and in such event, all rights of the Purchaser shall cease and the Purchaser shall have no right, title, interest or claim of any kind in or to the real estate described herein or improvements thereon, or under the terms of this agreement.

12. Failure or delay of the Owner to exercise any option or remedy hereunder for any default or breach of condition shall not operate as a waiver of the right of the Owner to

pursue such option or remedy for the same or any subsequent default at any time thereafter. (Our emhasis.)
\* \* \*"

The Nelsons' record of principal and interest payments was sporadic.[1] On August 30, 1967, the Butchers, through their attorneys, gave the Nelsons notice that pursuant to paragraph eleven [11] of their contract that it was now cancelled and demanded immediate possession of the property. On September 8, 1967, the contract was reinstated when the Nelsons brought all payments up to date.

Following the reinstatement of their contract, the next payment from the Nelsons was due on October 11, 1967. This payment was not made. On November 15, 1967, the Butchers received their next isstallment from the Nelsons which they credited to the payment due on November 11, 1967. Instead of cancelling the contract on December 11, 1967, which would have been 60 days subsequent to the delinquent payment of October 11, 1967, the Butchers accepted another payment on December 12, 1967, and applied it to the payment due as of December 11, 1967.

The Nelsons then made a regular series of payments until they missed the payment which came due on December 11, 1968. The next payment received from the Nelsons was on January 2, 1969, and was credited for the payment due on January 11, 1969. The Nelsons continued to make regular payments until July, 1969, which payment they missed. The Butchers accepted a payment from the Nelsons on August 12, 1969, and applied it to the payment due on August 11, 1969. The Nelsons missed their September, 1969, payment, but tendered a payment on October 3, 1969, which was accepted by the Butchers and applied toward the Nelsons' payment due on October 11, 1969. Finally, the Nelsons failed to make a payment for January, 1970. The next payment was

---

1. Owing to our resolution of this appeal it will be unnecessary for us to consider the Nelson's assignments of error as they relate to their failure to pay taxes and insurance.

made on February 7, 1970, and applied by the Butchers toward their contract with the Nelsons.

On March 11, 1970, the Butchers served notice on the Nelsons that they had until April 1, 1970 to vacate the property.

At the time the Nelsons were given notice to vacate they were a total of five payments in arrears.

## ISSUES

We have chosen to consolidate Nelsons' overlapping assignments of error. As consolidated, the following issues are presented for our review:

    1. Did the trial court err in finding that the Butchers were lawfully entitled to possession of the real estate described in their complaint?

    2. Did the trial court err in denying the Nelsons' counterclaim for damages?

## ISSUE ONE:

The Nelsons argue that the trial court committed reversible error by finding that the Butchers were entitled to possession of the land which was being sold to them pursuant to a conditional sales contract. They contend that the Butchers were not entitled to exercise the contract's forfeiture clause because of the Butchers' failure to notify them that the time of making payments would be considered "of the essence" in the future after customarily accepting late payments. Furthermore, the Butchers were forbidden from exercising the forfeiture clause because of the mandates of *Skendzel* v. *Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, which recognized that under certain circumstances a vendor's interest under a contract to sell land must be treated as analogous to that of a mortgagee, hence, relegating him to the remedy of foreclosure as provided for by Ind. Rules of Procedure, Trial Rule 69 (C).

We should note at the outset that the trial court made general findings of fact pursuant to TR. 52(A). Therefore, on

appeal, our standard of review is limited to determining whether the trial court's findings were clearly erroneous. As stated in *Citizens Gas & Coke Utility* v. *Wells* (1971), 150 Ind. App. 78, 275 N.E.2d 323, 329:

" 'On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and the due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'

In 3 Harvey, Ind. Practice 427, the author recites the 'clearly erroneous' test to be applied to such findings:

'The United States Supreme Court has held that a finding is clearly erroneous, "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S.* v. *U.S. Gypsum Co.,* 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, rehearing denied, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147.' "

The record discloses that the Nelsons failed to make payments to the Butchers pursuant to their contract for the months of October, 1967, December, 1968, July, 1969, September, 1969, and January, 1970.

When a conditional vendor accepts late payments from his vendee the applicable rule of law as it relates to forfeiture is well settled. As our Supreme Court said in *Skendzel* v. *Marshall, supra,* at pp. 643-644:

" 'Where a contract for the sale and purchase of land contains provisions similar to those in the contract in the case at bar, *the vendor may waive strict compliance with the provisions of the contract by accepting overdue or irregular payments,* and having so done, equity requires the vendor give specific notice of his intent that he will no longer be indulgent and that he will insist on his right of forfeiture unless the default is paid within a reasonable and specified time.' " (Their emphasis.) (Citation omitted).

The rule requiring a conditional vendor of a contract to sell land to give notice to his vendee that he will in the future

insist on his right of forfeiture unless the default is paid within a reasonable and specified time was also clearly emphasized in the case of *McBride* v. *Griffith* (1962), 134 Ind. App. 12, 185 N.E.2d 22, 24, wherein it was held:

> "It is now established by the judicial decisions of this state that an indulgent vendor, who consistently fails to require of the vendee compliance with the contractual provisions existing between himself and the vendee, *thereby waives the provisions of the contract making the time of payment of the essence thereof and casts upon him the duty to give definite and specific notice to the buyer that he will be indulgent no longer and has a present intent to make full use of the forfeiture provisions in the contract unless the delinquent installments are paid within a specified but reasonable time. Clayton* v. *Fletcher Savings & Trust Co.* (1927), 89 Ind. App. 431, 434, 155 N.E. 539; *Baker* v. *Eades* (1930), 90 Ind. App. 664, 169 N.E. 686; *Chambers* v. *Boatright* (1961), [132] Ind. App. [378], 177 N.E.2d 600, 603. . ." (Our emphasis.)

The record disclosed that the following testimony was heard by the trial court on the question of whether the Butchers gave notice to the Nelsons that in the future all payments must be made on time or the contract would be cancelled.

At the hearing on cross motions for summary judgment John Butcher gave the following testimony:

"* * *

A. As I remember there was advance notice filed three times, two times before by Mr. Mahoney, that unless the contract was brought up to date they would be ejected. I also this last time, Mr. McCoy, as I understand gave notice to the Nelsons by calling them into his office.

Q. Now was this after he had declared the contract in default for you, that he had called them into the office?

A. After he had talked to me on the contract, after I

Q. Well did you give the Nelsons any advance warning of your decision to declare the rights under the contract with them forefeited prior to your declaration of forefeiture in March of 1970?

A. I don't believe so.

* * *"

On cross-examination John Butcher testified during trial as follows:

"\* \* \*

Q. Alright, now did you personally give the Nelsons notice giving them a time within which to make up any of these monthly payments that were missed?

A. Did we give them time to make them up?

Q. Did you personally give the Nelsons a notice giving them time in which to make up these payments missed in any of these months?

A. Not me personally.

Q. Prior to your letter of March 11, 1970, which has been admitted here, a letter of your attorney which has been admitted here as Exhibit H and I recall, from Dale McCoy to the Nelsons, did you or anyone on your behalf give the Nelsons a time within which to make the payments which were due in October of 67, December of 68, July of 69, September of 69, or January of 1970?

A. I don't know how his letter was stated, how much time was given.

Q. Aside from that letter did you give any notice?

A. Not me personally no, not me in my personal hand.

Q. Have you at anytime since August 3, 1967, personally given the Nelsons specific notice that you would declare a forfeiture if the required monthly payments were not made?

A. By my own handwriting?

Q. Did you personally?

A. No.

\* \* \*"

Virginia Butcher gave the following testimony concerning notices which she sent to the Nelsons:

"\* \* \*

Q. Mrs. Butcher I will ask you if prior to March 11, 1970, prior to April 1, 1970, did you give the Nelsons a time in which they might make up delinquent taxes, delinquent payments, or delinquent insurance?

A. Mr. McCoy took care of that, that was at the last, and I don't know.

Q. To your knowledge you did not give any such notices?

A. I was not involved at that particular time. We had a lot of other problems.

Q. I am asking if you gave any such notices?

A. To them you mean?

Q. Yes, you personally.

A. No, I have never met them before so I couldn't of.

Q. Have you at anytime since August 30, 1967, given the Nelsons specific notice that you would declare a forefeiture if the required monthly payment, or the required taxes, or the required insurance, were not made?

A. Mr. Mahoney did.

Q. Have you personally done this?

A. What was said before. I can't quote verbatim, I'd be idiotic if I said I could, that's been a long time ago.

Q. Would you know if you had given such notices?

A. Not necessarily. I wouldn't know what the letter said, I doubt if any secretary could tell you word for word what she wrote four years ago.

Q. Alright, as owner of this real estate, did you give any such notices?

MR. MAHONEY: Wait a minute, when—

Q. My question was after August 30, 1967, did she give the Nelsons specific notice that she would declare a forefeiture for the required monthly payments, the taxes and insurance?

A. Anything I say is going to be a guess. If I say no, I'm wrong, and if I say yes, I'm wrong.

MR. DAVIS: Your Honor I think the witness has answered that if she says no, she's wrong, and if she says yes, she's wrong. I don't know what to do with it from there.

BY THE COURT: Mrs. Butcher to your knowledge do you have any specific knowledge of sending any notices such as described by Mr. Davis after August?

A. My mind is just a complete blank about it.

BY THE COURT: In other words, you have no specific knowledge?

A. No, I am just afraid to say.

                *    *    *"

The trial court therefore had before it John Butcher's testimony that he had not personally notified the Nelsons giving

them a time within which to make up missed payments. Also, it had Virginia Butcher's testimony that it was Mr. Mahoney's job to notify clients of overdue payments, and she could not say whether she had ever done so or not. The one person who could have cleared up the mystery of the missing notices, Mr. Mahoney, was never called upon to testify.

Therefore, although a modicum of evidence does exist which would have allowed the trial court to infer that the Butchers gave notice to the Nelsons, we, upon our review of the entire record, are left with the firm conviction that the trial court committed error in finding that the Butchers gave adequate notice to the Nelsons. *Citizens Gas & Coke Utility, supra.*

ISSUE TWO:

The Butchers contend that there are alternative grounds why this court should uphold the judgment of the trial court in spite of the error that we have found to exist and have discussed at length above. We will now address ourselves briefly to these alternative contentions.

The Butchers argue that the acceptance of late payments in the case at bar did not constitute a waiver of the forfeiture clause. As authority for their position they cite the case of *Conner* v. *Fisher* (1964), 136 Ind. App. 511, 202 N.E.2d 572. In the Conner case, appellant argued that since the late payments he accepted were all accepted during the "sixty day grace period" he could not properly be held to have waived the forfeiture clause of his contract. The court in accepting this argument said, at pp. 516-517:

> "It seems but logical to conclude that as a consequence of the said grace period extended to appellee by the contract, the acceptance by appellants of appellee's payments made within such period fails to warrant the legal imposition upon appellants of a waiver of the contract provisions as to time of payment so as to debar them from enforcement of the contract as written. To hold that appellants' acceptance of payments which, by the terms of the contract, they could not legally refuse, constituted a waiver by them of the contractual requirement of prompt payment, would authorize

the appellee to enforce a forfeiture of appellants' contractual rights on the ground that the latter complied with a provision of contract beneficial only to appellee. Such construction, we think, would be grossly inequitable. . . ."

At page 518 the court continued:

"It is noted from the above evidentiary schedule of payments as they were made that none was paid to or accepted by appellants subsequent to the expiration of the sixty-day grace period. *All, except the defaulted payments due October 11 and November 11, were paid well within the sixty-day grace period.* . . ." (Our emphasis.)

We feel that *Conner, supra,* is readily distinguishable from the case at bar. In *Conner,* all payments were made and applied to each successive monthly installment within the sixty day grace period. The end result of Conner's bookkeeping procedure was that the only two months which were in fact not accounted for by the payment of a monthly installment were the months of October and November. Therefore, Conner could not exercise his right to declare a forfeiture until some point after November 11, 1960.

In the case at bar, the testimony at trial revealed that the Nelsons were five months behind in their payments at the time the Butchers sought to exercise their power to declare the contract forfeited. Payments had not been made for the months of October, 1967, December, 1968, July, 1969, September, 1969, and January, 1970. The Butchers, if they had so desired, could have cancelled the contract on December 12, 1967, when the October 11, 1967 payment became sixty days in arrears. They chose not to do this, but rather to continue to accept payments under the contract and apply them to subsequent monthly installments. The Butchers, therefore, received numerous payments outside the sixty-day grace period which were not retroactively applied to make-up past deficiencies and which they were under no legal duty to accept.

The Butchers next contend that the issue of wrongful eject-

ment became moot because the Nelsons abandoned the premises by not posting a bond and remaining in possession throughout the course of the trial. IC 1971, 32-6-1-3 (Burns Code Ed.).[2] As authority for this position the Butchers cite *Haas* v. *Rathburn* (1965), 137 Ind. App. 172, 205 N.E.2d 329. In *Haas,* the appellants filed a complaint seeking to eject the appellees. The appellees counterclaimed saying that the mere filing of a suit in ejectment breached their leasehold agreement and caused them substantial damage. The court held at pages 174 and 176:

> "The issue of ejectment became moot at the time the appellees voluntarily vacated the leasehold premises and is not now under consideration in this appeal. . . .
>
> \* \* \*
>
> Because there are no allegations in the counterclaim of other acts that would have constituted a breach of the leasehold agreement, and in view of the Trout decision, *supra,* we hold that the appellees did not have a valid counterclaim since the issue of wrongful eviction was never before the trial court. It necessarily follows that since appellees never had a valid counterclaim a verdict will not cure this error and the decision is contrary to law. . . ."

The Butchers' reliance on *Haas, supra,* and *Trout, et al.* v. *Brown, et al.* (1954), 125 Ind. App. 381, 123 N.E.2d 647, is not well founded. The *Trout* decision held only that the trial court did not err in sustaining appellee's demurrer to appellants' counterclaim, because the appellants' counterclaim sought to introduce new and distinct matters not brought forth in appellee's complaint.

Our modern rules of trial procedure distinguish between permissive and mandatory counterclaims, but abrogate all restrictions on the right to plead a counterclaim. *See, Sowders* v. *Clyde Overdorf Motors, Inc.* (1972), 154 Ind. App. 123, 289 N.E.2d 332, 334; Ind. Rules of Procedure, Trial Rule 13(A) and (B). The Nelsons' failure to post a bond and maintain

---

2. This statute which governed the rights of the parties at the time the case before us was commenced, was repealed by Acts 1973, P.L. 303 § 2, and replaced by IC 1971, 32-6-1.5-1, *et seq.* (Burns Code Ed.).

possession of the property in light of our modern procedural rules did not, therefore result in their waiving the right to raise by counterclaim the issue of wrongful ejectment by the Butchers.

The Butchers next contend that the Nelsons have elected a remedy inconsistent with their rights as contract purchasers. Their argument apparently is that the Nelsons are estopped from claiming both their right to possession and damages. We find this argument to be without merit. Ind. Rules of Procedure, Trial Rule 8(E)(2) provides:

> "A pleading set [sic] forth two [2] or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two [2] or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. *A pleading may also state as many separate claims or defenses as the pleader has regardless of consistency and whether based on legal or equitable grounds.* All statements shall be made subject to the obligations set forth in Rule 11." (Our emphasis.)

Having found that the trial court erred in adjudging the Butchers were entitled to possession of the property in question in the absence of an adequate notice afforded the Nelsons telling them late payments will not in the future be accepted, and giving them a reasonable and specified time within which to make up deficiencies, we reverse this cause and remand it to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 352 N.E.2d 106.