Cleo McLENDON, Tommie Isom and Maude Isom, Appellants (Defendants Below),

v.

SAFE REALTY CORPORATION as Assignee of Mary Louise Miller Zoll, Appellee (Plaintiff Below).

No. 2–277A68.

Court of Appeals of Indiana, Fourth District.

March 10, 1980.

Gustin J. Raikos, John D. Raikos, Raikos, Martenet & Raikos, Indianapolis, for appellants.

William F. Thompson, Frederick A. Fetta, Compton, Coons, Fetta & Thompson, Indianapolis, for appellee.

YOUNG, Judge.

This case was transferred to this office in December, 1979, in order to relieve a disparity of caseloads among the districts.

Cleo McLendon (McLendon) appeals the granting of summary judgment forfeiting his contract for the conditional sale of real estate and quieting title to the real estate in favor of Safe Realty Corporation (Safe). The following allegations are presented: [1]

I. The trial court erred in declaring a forfeiture of the land sale contract, allowing Safe to retain McLendon's prior payments as liquidated damages;

---

1. McLendon also raises other issues not presented to the trial court in the motion to correct errors and, these, therefore, may not be considered on appeal. Ind. Rules of Procedure, Trial Rule 59(G).

II. Safe was required to serve notice of intent to declare a forfeiture as a condition precedent to instituting an action to quiet title and to forfeit the land sale contract.

We reverse

McLendon and Tommie and Maude Isom (the Isoms) entered into a contract for conditional sale of a commercial property in Indianapolis with Mary Louise Miller Zoll (Zoll) on March 31, 1970, for the principal sum of $10,000.00. The form contract called for a down payment of $2,000.00 and monthly payments of $150.00, with interest at 7% computed semi-annually on the unpaid balance. McLendon and the Isoms, as purchasers, were to pay all real estate taxes and assessments and were not to assign their interest in the contract or property, to allow any persons other than themselves to occupy the property, or to alter any of the improvements on the property without Zoll's written consent.

The Isoms apparently conveyed their interest in the contract and property to McLendon, who in turn contracted to sell the property to Freddie Lewis (Lewis) on November 15, 1972, without notice to or the consent of Zoll. Lewis took possession of the property and made substantial unauthorized alterations which were not completed as his business failed and he vacated the property. During this time, McLendon continued to make the monthly payments under his contract with Zoll. He did not, however, pay the real estate taxes for 1971, payable in 1972, or 1972, payable in 1973.

On January 23, 1974, Zoll assigned the contract and gave a warranty deed to the property to Safe. Safe filed its complaint in ejectment, quiet title and forfeiture on February 15, 1974. In granting summary judgment for Safe, the trial court held the defendants were in default under the contract because they had failed to pay all real estate taxes due, had transferred their interest in the property without the written consent of Zoll, and had allowed the property to stand vacant and deteriorate. The trial court found that the defendants had no equity in the real estate as the principal owed under the contract and the accumulated delinquent real estate taxes exceeded the original purchase price under the contract and, therefore, forfeited the defendants' interest in the contract.

## I.

The record supports a judgment based upon breach of contract. Our inquiry here is centered upon the question of a remedy. *Morris v. Weigle*, (1978) Ind., 383 N.E.2d 341, 342. McLendon urges the order of forfeiture is contrary to the policy set out by our Supreme Court in *Skendzel v. Marshall*, (1973) 261 Ind. 226, 301 N.E.2d 641. There the court pierced the transparent distinction between a conditional land contract and a mortgage, holding that a forfeiture of $21,000.00 as liquidated damages, considered in relation to the total contract price of $36,000.00, was inconsistent with generally accepted principles of fairness and equity, and remanded with instructions to enter a judgment of foreclosure on the vendors' lien, pursuant to Trial Rule 69(C) and the mortgage foreclosure statute. Forfeiture of a land sale contract was found to be closely akin to strict foreclosure of a mortgage, a common law remedy rejected by American jurisdictions in favor of foreclosure by judicial sale. The court declared, however, that:

> This is not to suggest that a forfeiture is an inappropriate remedy for the breach of all land contracts. In the case of an abandoning, absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default and seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the premises. Of course, in this latter situation, the vendee will have acquired very little, if any equity in the property. However, a court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss.

We are persuaded that forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law.

*Id.*, 261 Ind. at 240–41, 301 N.E.2d at 650.

█ Forfeiture, then, is an equitable remedy when the vendor is faced with an "abandoning, absconding vendee," yet such a vendee was not clearly defined by the *Skendzel* court. Nor is the absence of such as obvious as it was in *Morris*, 383 N.E.2d at 344. The court did cite with approval the following language found at 6 A.L.R.2d 1405 (1949):

On the other hand, if the amount of the payments received by the vendor at the time *the purchase was abandoned* represents but a small percentage of the total purchase price, and if the purchaser's breach occurred soon after the execution of the agreement . . . , the courts tend to hold that the forfeiture clause was one for liquidated damages . . . (emphasis added)

*Skendzel, supra*, 261 Ind. at 233, 301 N.E.2d 645.

█ Abandonment in this context does not appear to have been defined by any other cases in this state. In *Hatcher v. Smith*, (1972) 152 Ind.App. 299, 283 N.E.2d 582, 590, the court discussed abandonment of employment and defined abandonment as "an absolute relinquishment; a total desertion . . . . Intention is the first and paramount object of inquiry." In discussing abandonment of personal property the court in *Hoeppner v. Slagle*, (1967) 141 Ind.App. 622, 231 N.E.2d 51, 53 said for there to be "an abandonment of property, there must be a concurrence of the intention to abandon and an actual relinquishment." In *Hatcher, supra*, the court suggested we turn to Words and Phrases for a definition. We find there, in reference to abandonment of a land sales contract, the acts relied on must be positive, unequivocal, and inconsistent with the existence of the contract and that abandonment is a matter

of intent. 1 Words and Phrases p. 46 (1964); *see also* Black's Law Dictionary 3 (5th ed. 1979). On the basis of these definitions we believe that for there to be an abandonment of a conditional land sales contract one must actually and intentionally relinquish possession of the land and act in a manner which is unequivocally inconsistent with the existence of a contract. McLendon's contract with Lewis, the fact he allowed the property to stand vacant and deteriorate, and his failure to pay real estate taxes are relevant factors in determining that he abandoned the contract. *See generally,* Annot., 68 A.L.R.2d 581 (1959). However, the record indicates McLendon was not in default for failure to make the monthly payments of principal. In fact, he continued to tender these payments to Zoll for four months after Safe had filed suit. This is evidence clearly contrary to an abandonment of the contract. Rather, it is consistent with the existence of the contract.

Furthermore, *Skendzel* spoke of an "abandoning, *absconding* vendee." The word "abscond" means to hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process. Black's Law Dictionary 8 (5th ed. 1979). The record before us is devoid of evidence that McLendon absconded.

█ We cannot say McLendon had paid a "minimal amount" on the contract at the time of default, giving him little, if any, equity in the property. The trial court found McLendon had no equity in the real estate as the principal owed under the contract and the accumulated delinquent real estate taxes exceeded the original contract price.[2] However, "equity" in this context is the amount or value of a property above the liens and charges against it. The Supreme Court in *Crane v. Commissioner of Internal Revenue*, (1947) 331 U.S. 1, 7, 67 S.Ct. 1047, 1051, 91 L.Ed. 1301 was faced with the construction of a section of the Internal Revenue Code. The petitioner argued that property and equity were synono-

2. The principal balance as of January 2, 1974, when added to all real estate taxes that became

due before and after the filing of this action totals over $10,000.

mous. The court held they were not synonomous and in the course of its analysis defined equity as "the value of a property . . . above the total of the liens," citing Websters New International Dictionary (Unabridged 2d ed.). While we find substantial evidence in the record of the liens and charges against the real estate, we find no evidence of the value of the property at the time this action was filed or at the time of judgment, from which a determination of McLendon's equity in it could have been made. *See e. g., Morris, supra* at 344.

■ The record does disclose that as of January 2, 1974, McLendon owed $2724.00 on the principal balance plus interest, having paid $7276 or over 72% of the $10,000.00 original contract price. If the delinquent taxes that became due in 1972 and 1973, which were paid by Safe after it had instituted this action, are added to the principal balance due as provided for under the contract McLendon owed Safe $6393.47 plus interest on the principal balance (total of $6488.81), but still had paid 53% of the total price.[3] Even if we add the $4266.17 in real estate taxes that became due while suit was pending,[4] McLendon's $7276 payment of principal represented 40% of the total contract price.[5] The supreme court held payment of 29.7% of the principal amount due on a land sale contract was more than a "minimal amount" under *Skendzel. Morris v. Weigle, supra; see also Bartlett v. Wise,* (1976) Ind.App., 348 N.E.2d 652 (one-third of the principal amount held more than a minimal amount).

■ That McLendon's failure to pay taxes increased the total amount he would

---

**3.** The contract provides that if the vendee fails to pay any tax or assessment, the vendor may pay and add the payment to the principal balance due. In determining whether McLendon had paid a "minimal amount", therefore, we feel it is necessary to examine the amount he has paid in relation to the total amount he would have to pay to perform the contract. In this light, the $3669.47 delinquent taxes added to the original contract price makes the total contract price $13,669.47.

**4.** Generally, the plaintiff's right to a remedy must be determined as of the time of the commencement of the action. 1 C.J.S. *Actions*

---

have had to pay under the contract should not cause us to lose sight of the fact that he had already paid a fairly substantial sum of money. A forfeiture under these circumstances is not consonant with notions of fairness and justice under law.

Because of our decision on this issue, we need not address the remaining issue.

Accordingly, we reverse the judgment of the trial court and remand for further proceedings not inconsistent with this decision.

BUCHANAN, C. J. (sitting by designation), and CHIPMAN, J., concur.

§ 125 (1936). While we have little difficulty in adding the $1419.54 real estate taxes for 1973, payable in 1974, to our consideration of whether McLendon's payments were a "minimal amount", we question whether it is proper to include his failure to pay taxes that became due and owing while this action was pending and he was facing the possible forfeiture of his interest in the property. We do so here only for the sake of argument.

**5.** See n. 3, *supra.* The addition of $4266.17 makes the total contract price $17,935.64.