## U. S. AIRCRAFT FINANCING, INC., an Indiana Corporation, Appellant-Defendant,

v.

## Nick JANKOVICH and Paul Jankovich, Individually and as partners doing business as Calumet Aviation Company, Appellees-Plaintiffs,

and

## City of Gary by and through its Board of Aviation Commissioners, Appellee-Intervenor.

### No. 3–877A196.

Court of Appeals of Indiana, Fourth District.

July 21, 1980.
Rehearing Denied Aug. 20, 1980.

William F. Kane, Jr., Lucas, Clifford, Kane & Holcomb, Merrillville, for appellant-defendant.

Douglas M. Grimes, Gary, for appellees-plaintiffs.

CHIPMAN, Judge.

This is an action for breach of a conditional sales contract. In 1965 Nick and Paul Jankovich d/b/a Calumet Aviation Company (Jankovich) sold to U. S. Aircraft Financing, Inc. (U. S. Aircraft) an airport business at the Gary Municipal Airport. U. S. Aircraft subsequently breached the contract and Jankovich brought suit in 1974. Following a bench trial the court entered judgment for Jankovich and ordered a strict forfeiture. We reverse.

The contract conveyed to U. S. Aircraft all real and personal property of Calumet Aviation Company at the Gary airport for $300,000. The personal property included tools, equipment, fixtures and office furniture. The real property conveyed was limited to two large hangars, a number of "T" hangars and other structures. The land upon which these buildings were located belonged to the Gary Municipal Airport. Jankovich had a Ground Base Operator's Lease and Fueling Agreement with the Airport Authority which permitted Calumet Aviation to operate its business at the airport. These agreements were assigned to U. S. Aircraft at the time the sales contract was executed. In 1968 the Lease and Fueling Agreement were renegotiated between U.S. Aircraft and the City of Gary.

U. S. Aircraft began experiencing financial difficulties in 1972. Its monthly payments to Jankovich were irregular and for a number of months only interest was paid on the contract. There is also evidence U. S. Aircraft breached the contract by failing to pay taxes and insurance premiums. Shortly after the institution of this suit in October, 1974, Jankovich posted a $300,000 bond and was granted possession of the property. In 1975 the City of Gary inter-

vened and pursuant to its request a receiver pendente lite was appointed. The receivership was approved by the Third District of this Court. *U.S. Aircraft Financing, Inc. v. Jankovich*, (1977) Ind.App., 365 N.E.2d 783.

The issues necessary to our resolution of this appeal are as follows:

I. Was the City of Gary properly allowed to intervene?

II. Whether the judgment of the trial court was contrary to law in that:

A) Jankovich waived strict compliance with the contract's default provisions;

B) the judgment constitutes an excessive forfeiture;

C) U. S. Aircraft was improperly ordered to transfer all interest in the Fixed Base Operator's Lease and Fueling Agreement;

D) the award of $30,000 in attorney's fees was an abuse of discretion?

## I. INTERVENTION

■ U. S. Aircraft contends the City of Gary's motion to intervene was improperly granted for three reasons: 1) the motion did not state specific grounds therefor; 2) the City had no direct substantial interest in the subject matter of the suit between Jankovich and U. S. Aircraft, and 3) there is no common question of law or fact between the City's claims and the suit between the other two parties. The brief of the appellee ignores these contentions; the issue is not even mentioned in the entire eight pages of the brief. Thus we may reverse if appellant has made a prima facie showing of reversible error. *Jahn v. Jahn*, (1979) Ind.App., 385 N.E.2d 488. This rule, however, is solely for the benefit of this court, *Ligon Specialized Haulers, Inc. v. Hott*, (1979) Ind.App., 384 N.E.2d 1071, and we have decided to address the merits.

■ For its first contention U. S. Aircraft argues the motion should have been denied because it did not include a statement of grounds in support of intervention. Ind.Rules of Procedure, Trial Rule 24(C) specifically requires that a motion to intervene "shall state the grounds therefor

. . . ." In the strictest sense the City of Gary's motion did not comply with this requirement. However, a multiple page document which set forth its claims against U. S. Aircraft and Jankovich was attached to the motion. Although the preferred practice would have been for the City to briefly list the bases for its intervention in the motion itself, the attached document more than complied with the requirements of T.R. 24(C).

The Indiana Trial Rules permit two types of intervention: intervention of right under T.R. 24(A) and permissive intervention pursuant to T.R. 24(B). U. S. Aircraft's second contention concerns intervention of right while its third argument is addressed to permissive intervention. We have examined the record and determined the City of Gary was properly permitted to intervene under T.R. 24(A).

■ For a party to be allowed to intervene under 24(A)(2) it must show it has a right or interest in the property or transaction which is the subject matter of the suit and that it is not adequately represented by either party. The latter criterion was clearly met by the City; its motion asserted claims against both U. S. Aircraft and Jankovich. The City also established a significant interest in the subject of the suit. A perusal of the record reveals the City of Gary maintains no fueling or maintenance facilities at the airport. These functions are performed by private companies pursuant to ground base operator's leases. At the time of the City's intervention there were two ground base operators at the airport, the smaller of which did not contribute substantially to the airport's operation. To state the obvious, the personal and real property covered by the sales contract was essential to the performance of fueling and maintenance services by U. S. Aircraft. The City of Gary clearly had a substantial interest in the continued performance of these services. The City therefore had an interest in the subject matter of this suit and was properly permitted to intervene pursuant to T.R. 24(A)(2).

## II A. WAIVER

U. S. Aircraft argues the court erred in enforcing the default provisions of the contract because it claims Jankovich waived strict compliance with the contractual provisions by accepting late and irregular payments. Jankovich says the default provisions were not waived.

■ It is the law that once a seller accepts irregular or late payments without protest the seller waives strict enforcement of the contract. *Snyder v. International Harvester Credit Corp.*, (1970) 147 Ind.App. 364, 261 N.E.2d 71; *Pierce v. Yochum*, (1975) 164 Ind.App. 443, 330 N.E.2d 102. However, if the seller subsequently notifies the buyer he will no longer tolerate anything less than full compliance and will insist upon exercising his rights under the contract unless the default is paid within a reasonable time the waiver is no longer effective. *Nelson v. Butcher*, (1976) Ind. App., 352 N.E.2d 106; *Pierce v. Yochum*, *supra*.

■ We do not believe Jankovich waived strict compliance with the contract. U. S. Aircraft was given permission by Jankovich to make three payments of interest only during a period of financial stress. After the three months had elapsed, however, U. S. Aircraft continued to make late and irregular payments of interest only. Although Jankovich accepted these payments, the acceptance was not without protest. During this period two letters were sent to U. S. Aircraft's President. Both letters complained of the lack of payment on the principal and contained language such as, "we are not in a position to tolerate this problem any longer," and "we are going to have to take the necessary action to protect our interest at the airport." In light of these letters it is difficult to say Jankovich waived any right to enforce the contract.

Even if we were to hold Jankovich had at one time waived strict enforcement of the contract, a third letter may constitute the notice required of a seller who seeks to enforce contractual rights after a waiver. This letter, dated August 5, 1974, states Jankovich's intention to enforce the default provisions of the contract unless the contract is paid in full. If this letter had been delivered to U. S. Aircraft it clearly would have negated any previous waiver by Jankovich. *Nelson v. Butcher, supra; Pierce v. Yochum, supra.* However, the letter was sent to George Martin who at one time was the sole stockholder in U. S. Aircraft. Apparently there was never a formal assignment of Mr. Martin's interest to the present owners of the company. At any rate, the current President of U. S. Aircraft testified U. S. Aircraft never received this notice. If this were true, it is arguable that Jankovich should be held to have waived the default provisions of the contract.

The question, however, is rendered academic by other breaches by U. S. Aircraft. The record reveals U. S. Aircraft failed to adequately insure the property and pay taxes as required by the contract. Thus, even if we were to hold Jankovich waived his right to strictly enforce the contract by accepting late and irregular payments, the other breaches by U. S. Aircraft are more than sufficient grounds to support the action by Jankovich.

## II B. EXCESSIVE FORFEITURE

Having determined Jankovich had not waived any right to sue under the contract we now turn our attention to the remedy granted by the trial court. It is vigorously contended by U. S. Aircraft that the trial court's ordering of strict forfeiture constituted an excessive forfeiture and is void under *Skendzel v. Marshall*, (1973) 261 Ind. 226, 301 N.E.2d 641. Appellee Jankovich's response is that *Skendzel* does not apply to this fact situation. We do not accept Jankovich's position and agree with U. S. Aircraft.

■ Before discussing the forfeiture itself it is necessary to note the unique situation presented by this contract. With the exception of the hangars, all property conveyed by the contract was personal property. Under the provisions of the Uniform Commercial Code, Ind. Code 26–1–9–105, –107, the conditional sales contract exe-

cuted by the parties created a security interest in the personal property. Upon default Jankovich, a secured party, thus had all the default provisions of part five of article nine of the Uniform Commercial Code. However, whether knowingly or not, Jankovich opted to seek to enforce the contract on the basis of real property principles. Ind. Code 26–1–9–501(4) provides:

"If the security agreement covers both real and personal property, the secured party may proceed under this Part [26–1–9–501—26–1–9–507] as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this Part [26–1–9–501—26–1–9–507] do not apply."

Where a secured party has a security interest in both real and personal property he has the option upon the debtor's default of proceeding against the personalty pursuant to article 9 or against both real and personal property under the law relating to real property. If he follows the latter procedure, the Uniform Commercial Code is inapplicable even with regard to the personal property. *Hildner v. Fox,* (1974) 17 Ill. App.3d 97, 308 N.E.2d 301, 13 U.C.C.Rep. 1219; Davenport, *Default, Enforcement and Remedies Under Revised Article Nine of the Uniform Commercial Code,* 7 Val.U. L.Rev. 265, 304 (1973).

■ Appellee Jankovich's only response to the excessive forfeiture argument raised by U. S. Aircraft is that *Skendzel v. Marshall* is inapplicable to this case as the subject matter here is primarily personal property while *Skendzel* concerned only real property. We do not accept this distinction. As we read *Skendzel v. Marshall* the thrust of the opinion is not concerned with principles of real property law, but with principles of equity which are applicable to all conditional sales contexts. Justice Hunter wrote of "notions of fairness and justice under the law." We perceive no reason why these notions should be limited to real property contexts. *See 2625 Building Corp. v. Deutsch,* (1979) Ind.App., 385 N.E.2d 1189.

The default provisions in the parties' contract authorized Jankovich upon default to retake possession of the property and retain all monies paid as liquidated damages. At the time of the suit U. S. Aircraft had paid $188,000 or 62.7% of the $300,000 purchase price. The evidence also revealed U. S. Aircraft had breached the contract by failing to pay taxes, properly insure the property and by committing $60,000 worth of waste on the property. To determine whether forfeiture was proper under these circumstances we turn to *Skendzel v. Marshall* and its progeny.

■ In *Skendzel* our Supreme Court, while noting the law's general disfavor of forfeitures, suggested forfeiture would not always be an inappropriate remedy. Justice Hunter wrote, "In the case of an abandoning, absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default and seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the premises." *Skendzel v. Marshall,* (1973) 261 Ind. 226, 301 N.E.2d 641, 650.

■ This Court recently defined the phrase "abandoning, absconding vendee." *McLendon v. Safe Realty Corp.,* (1980) Ind. App., 401 N.E.2d 80. In *McLendon* Judge Young found judicial definitions of abandonment in employment and personal property contexts. *Hatcher v. Smith,* (1972) 152 Ind.App. 299, 283 N.E.2d 582, 590, defined abandonment of employment as "an absolute relinquishment; a total desertion. . . . Intention is the first and paramount object of the inquiry." Similarly, an abandonment of personal property requires "a concurrence of the intention to abandon and an actual relinquishment." *Hoeppner v. Slagle,* (1967) 141 Ind.App. 622, 231 N.E.2d 51, 53. On the basis of these definitions, Judge Young concluded, "[F]or there to be an abandonment of a conditional land sales contract one must actually and intentionally relinquish possession of the land and act

in a manner which is unequivocally inconsistent with the existence of a contract." *McLendon v. Safe Realty Corp., supra,* 401 N.E.2d at 83. Under this definition the conduct of U. S. Aircraft, although clearly a breach of the contract, did not amount to an abandonment. The company remained in possession of the property and continued to carry on the business of running the airport as best it could. U. S. Aircraft did not abandon the contract. *See Ogle v. Wright,* (1977) Ind.App., 360 N.E.2d 240.

Likewise, U. S. Aircraft cannot be said to have been an "absconding" vendee. Nowhere in the record do we find evidence that U. S. Aircraft even attempted to "hide, conceal, or absent oneself clandestinely." Black's Law Dictionary 8 (5th ed. 1979). *See McLendon v. Safe Realty Corp., supra,* 401 N.E.2d at 83.

We next turn our attention to determining whether U. S. Aircraft paid a "minimal amount" under the contract. The evidence reveals payments by U. S. Aircraft amounting to over 62% of the contract price —$188,000 on a total contract of $300,000. On its face this reveals an unconscionably excessive forfeiture. Our opinion is unchanged even if we look to U. S. Aircraft's total equity in the property. The trial court found U. S. Aircraft to be in arrears $30,000 in taxes, $52,000 in rents due the airport authority and to have committed $60,000 in waste. When these amounts are added to the contract price—$300,000—U. S. Aircraft's equity equals approximately 42% of all monies due. A forfeiture in this situation clearly violates *Skendzel v. Marshall. Morris v. Weigle,* (1978) Ind., 383 N.E.2d 341; *Ogle v. Wright,* (1977) Ind. App., 360 N.E.2d 240; *Fisel v. Yoder,* (1974) 162 Ind.App. 565, 320 N.E.2d 783; *Tidd v. Stauffer,* (1974) 159 Ind.App. 570, 308 N.E.2d 415.

Parties to a conditional sales contract surely have the right to bargain for and agree to the remedy provisions in the contract. Like most rights, however, these are not unlimited. Where the result of the parties' agreement is fair and equitable the provisions will be enforced. But where strict enforcement of the contract would result in an unconscionable burden on either party it becomes the duty of the court to preserve the notions of justice upon which our system of jurisprudence is based. To shirk this judgmental responsibility is not an infringement on the right to contract, but an application of ancient judicial principles of equity, fairness and common sense.

We therefore reverse the court's forfeiture order. The court is instructed to remedy the damage suffered by Jankovich as a result of U. S. Aircraft's breach by entering a judgment of foreclosure or other appropriate means.

## II C. LEASES

For its next assignment of error U. S. Aircraft claims the court erred in ordering a transfer of its interest in the ground lease and fuel flowage agreements to Jankovich. Appellee has not favored this Court with a response to this argument and we find error.

The ground lease and fuel flowage agreement were contracts executed between U. S. Aircraft and the City of Gary. Although Jankovich had once been the lessee under the agreements, all rights and interests had been assigned to U. S. Aircraft in 1965. We also note the agreements were subsequently renegotiated solely between U. S. Aircraft and the City of Gary. Although a court has broad discretion in forming its judgment to the particular circumstances of each case, *Brademas v. Hartwig,* (1977) Ind.App., 369 N.E.2d 954, we know of no authority, and none has been pointed out, by which a court may cancel one party's rights under a contract by a wholesale substitution of another party.

## II D. ATTORNEY'S FEES

The final issue raised concerns the award of $30,000 attorney's fees to Jankovich. U. S. Aircraft contends this award is an abuse of judicial discretion and furthermore it was made without foundation since

no mention was made of attorney's fees in either the sales contract or the complaint. Appellee Jankovich has again not favored us with a counterargument. We agree with appellant as to the amount of attorney's fees being an abuse of discretion and remand for the trial court to determine reasonable fees.

Paragraph six (6) of the sales contract between Jankovich and U. S. Aircraft provides reasonable attorney's fees are allowable in the event Jankovich's are required to enforce their contractual rights. The trial court, therefore, was justified in awarding attorney's fees.

The question then presented is whether the amount awarded was in a sum which would be regarded as an abuse of discretion since we can review for only such an abuse. *Streets v. M. G. I. C. Mortgage Corp.*, (1978) Ind.App., 378 N.E.2d 915. Although the reviewing court is generally reluctant to reverse when a trial court has exercised its discretion, we are compelled to do so in this case.

The evidence submitted at trial to support an award of attorney's fees consisted of the following exchange between Paul Jankovich and his attorney during direct examination:

"Q. The contract with U. S. Aircraft Financing calls for cost of litigation, attorneys fees and so forth in the event that that should become necessary, does it not?

A. That's correct.

Q. And you have been charged $30,000 attorney's fee, is that correct?

A. That's correct."

The trial court, in deciding on the amount of attorney's fees, also had available the various documents filed by counsel as well as being aware of the time spent by counsel in court. An examination of the record shows there were thirteen (13) pages, or portions thereof, of legal documents filed by the plaintiff and consisted of the complaint (excluding the copy of the sales contract), an answer to the defendant's counterclaim, an affidavit for immediate posses-sion, pretrial order, motion to dismiss and plaintiff's proposed findings of fact and conclusions of law.

The trial of the case was before the court without a jury and was completed in one day or less. Plaintiff and defendant each called one witness. When counsel does not present evidence as to the hours expended in behalf of his or her client and perhaps out-of-pocket expenses, the risk is then taken that a subsequent award of attorney's fees may be considered, on appeal, as excessive since the record may not indicate any justification for the amount awarded. Counsel should not place the trial court in such an awkward position.

The law in Indiana is conflicting on the question of whether a court can award attorney's fees without supporting evidence. Many cases decline to uphold an award without such evidence, *Sears Roebuck and Co. v. State*, (1967) 248 Ind. 169, 225 N.E.2d 175 (mandate to collect taxes); *Waverly Company v. Moran Electric Service*, (1940) 108 Ind.App. 75, 26 N.E.2d 55 (mechanic's lien); *Jackson v. J. A. Franklin & Son*, (1939) 107 Ind.App. 38, 23 N.E.2d 23 (mechanic's lien). Other cases have held a judge may take judicial notice of the reasonableness of a fee, *McDaniel v. McDaniel*, (1964) 245 Ind. 551, 201 N.E.2d 215 (divorce); *In re Davis*, (1932) 204 Ind. 227, 183 N.E. 547 (estate proceeding); *Fox v. Galvin*, (1978) Ind.App., 381 N.E.2d 103 (mechanic's lien foreclosure); *Geberin v. Geberin*, (1977) Ind.App., 360 N.E.2d 41 (divorce); *Wireman v. Wireman*, (1976) Ind.App., 343 N.E.2d 292 (divorce); *Roe v. Doe*, (1972) 154 Ind.App. 203, 289 N.E.2d 528 (paternity); *Marshall v. Russell R. Ewin, Inc.*, (1972) 152 Ind.App. 171, 282 N.E.2d 841 (note and mortgage foreclosure).

In examining the cases it would appear that in certain types of actions, particularly divorce or dissolution, it is generally held evidence is not required to support an award of attorney's fees. This is apparently true when the amount of the fees is relatively modest or appears to be the norm for the type of litigation under considera-

tion. However, where the nature of the action is unique, such as in *Sears, Roebuck & Co. v. State, supra,* involving a mandamus proceeding to compel the collection of property taxes, the Supreme Court held where there "is no evidence at all in the record on the subject of . . . attorney fees (t)he lack of evidence is fatal. . . . A finding by the court as to the value of an attorney's services should be supported by testimony." 225 N.E.2d at 183.

Litigants and courts would be well advised to examine the factors set forth in the *Code of Professional Responsibility,* DR 2–106(B) in determining what evidence they should consider in preparation for trial or when deciding the amount to be awarded.[1] These principles create a more objective foundation for a determination of fees rather than the subjective reaction of the trial judge, no matter how learned or experienced he or she may be.

There is no foreseeable hardship in establishing the amount of fees by way of the procedure we have outlined. Most lawyers maintain time records or can estimate their time spent on a particular case with some accuracy. The same is true with out-of-pocket expenses. Further, if it is felt the legal work performed justifies a higher than normal fee, there is no reason why testimony regarding the difficulty or complexity of a case should not be introduced. Any imposition upon or embarrassment of a lawyer forced to prove his fees in open court should be minimal, especially when balanced with the fact that such a practice would tend to enhance the integrity of the legal profession in the eyes of the litigants and the public at large.

Reversed and remanded for a new trial consistent with this opinion.

MILLER, P. J., concurs.

GARRARD, P. J. (sitting by designation), concurs with opinion.

GARRARD, Presiding Judge (concurring).

I concur in the majority opinion except part II B dealing with the forfeiture provision. As to that part I concur in the result reached only because throughout the litigation the parties have uniformly treated the buildings in question as real estate. Indeed, the agreement with the City of Gary whereby Jankovich derived its rights is not even in evidence.

Of course, it is well recognized that one party can place or erect a building upon the land of another, and if the parties agree, the building will not be deemed to become a part of the real estate. Thus, Jankovich's ownership and ability to sell the hangars and other structures erected on the land owned by the city could, and presumably was, preserved.

On the other hand, it is my impression that when this occurs the buildings in question remain personal property. *See, e. g., Brown v. Corbin* (1889), 121 Ind. 455, 23 N.E. 276; *Price v. Malott* (1882), 85 Ind. 266. While these are aged authorities I believe they correctly state the law.

Under such circumstances I believe the better view would treat all the assets involved in the sale contract to U. S. Aircraft as personal property and *ergo* subject to the provisions and remedies provided by the Uniform Commercial Code.

1. "DR 2–106 Fees for Legal Services.

   .    .    .    .

  (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

   .    .    .    .

(3) The fee customarily charged in the locality for similar legal services.
   .   .   .  .."