John L. LOONEY and Esther G. Looney, Plaintiffs-Appellees,

v.

FARMERS HOME ADMINISTRATION, Defendant-Appellant.

No. 85–1872.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1986.

Decided June 27, 1986.

Ronald L. Wilson, Badell & Wilson, Rushville, Ind., for plaintiffs-appellees.

Deborah Ruth Kant, Appellant Staff, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Lowry and Helen McCord ("the McCords" or the "buyers") arranged to purchase the property of John and Esther Looney ("the Looneys" or the "appellees") in Rush County, Indiana. When the McCords fell into financial troubles, they secured an emergency loan through the Farmers Home Administration (the "FmHA" or the "government"). In exchange, the FmHA received a second mortgage on the property. Later, after paying $123,280 to the Looneys, the McCords defaulted. The Looneys filed suit in the District Court for the Southern District of Indiana seeking forfeiture under the forfeiture clause in the buyers' contract. The FmHA filed a counterclaim asking instead for foreclosure, the usual remedy in cases of default. The court granted forfeiture, concluding that the buyers had paid too small an amount toward the contract principal to justify foreclosure. In light of the totality of circumstances surrounding the transactions at issue, we believe that foreclosure was the more appropriate remedy and therefore reverse.

On October 7, 1976, the Looneys and the McCords entered into a conditional land sales contract to convey 260 acres of property to the McCords for $250,000. The contract specified that this sum was to be amortized over a 20-year period at an annual interest rate of seven percent. The McCords were to make annual payments of $23,280 on November 15 of each year until the purchase price and all accrued interest was paid. They also agreed to pay real estate taxes, insurance and maintenance costs for the property.

Four years after agreeing to these terms, the McCords received an economic emergency loan for $183,800 from the FmHA under the 1978 version of the Emer-

gency Agricultural Credit Adjustment Act, 7 U.S.C. note prec. § 1961. In return for the loan, the McCords executed a promissory note for the amount of the loan plus 11% annual interest. As security for the note, the McCords granted the FmHA a mortgage on the land subject to the land sales contract. The Looneys were aware of and consented to this mortgage.

The McCords subsequently defaulted on their payment obligations to the Looneys. At the time of their default, the McCords had paid $123,280 to the Looneys but still owed $249,360.12 on the contract price. In 1983, the Looneys brought suit against the McCords and the FmHA seeking ejectment and forfeiture of the contract. Both the Looneys and the McCords moved for summary judgment and the court granted the Looneys' motion. On June 5, 1984, the government sought leave to file a counterclaim seeking foreclosure of its mortgage. The court allowed the government to file. The government then moved for summary judgment. Together with its motion, the government included two affidavits stating that the property had appreciated in value to $455,000.

The district court denied the government's motion for foreclosure. It held that the traditional presumption under Indiana law in favor of foreclosure did not apply because the McCords had made only minimal payments on the contract and had not paid their fall taxes or insurance installments. Because $249,360.12 was still owed on an initial base price of $250,000, the court found the McCords' equity in the property to be $639.88, only .26% of the principal. The court therefore found forfeiture appropriate, awarded the FmHA $639.88 and extinguished the FmHA's mortgage.

The FmHA appeals. It contends that foreclosure was the appropriate remedy because it would have protected all parties' interests. In receiving forfeiture, the government argues, the Looneys got a windfall. They kept the $123,280 that the buyers had paid over 7½ years and got

back property which the government's two uncontested affidavits stated had appreciated substantially. Moreover, the government states, the court miscalculated the McCords' payments on the contract and equity in the property and thus greatly undervalued what the government could justly recover. The court's theory, in effect, left the government's mortgage unsecured for much of the contract period.

In response, the Looneys note that the government had the opportunity to cure the buyers' default but did not. If the government really believed the property to have appreciated, appellees argue, it would have protected its interest by paying up the full amount of the annual installments and expenses. Since the government did not do this, it accepted the consequences. The Looneys also contend that the government cannot challenge the court's valuation of the McCords' equity because it never disputed or even responded to appellees' requests for admission which stated that the McCords' equity in the property was only $9,394.30 at the time the McCords secured their emergency loan.

### I.

Under Indiana law a conditional land sales contract is considered in the nature of a secured transaction, "the provisions of which are subject to all proper and just remedies at law and in equity." *Skendzel v. Marshall*, 261 Ind. 226, 241, 301 N.E.2d 641, 650 (1973) (italics omitted), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974). Recognizing the common maxim that "equity abhors forfeitures," the *Skendzel* court concluded that "judicial foreclosure of a land sales contract is in consonance with the notions of equity developed in American jurisprudence." 261 Ind. at 240, 301 N.E.2d at 650. Foreclosure generally protects the rights of all parties to a contract. Upon judicial sale the proceeds are first applied to the balance of the contract principal and interest owed the seller. Then, any junior lienholders take their share. Any surplus goes to the buyer.

*Skendzel* recognized, however, two instances where forfeiture was the appropriate remedy:

In the case of an abandoning, absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default and seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the premises.

261 Ind. at 240–41, 301 N.E.2d at 650.

While the Looneys' counsel contended at oral argument that the McCords were abandoning and absconding vendees, the district court did not rely on this first *Skendzel* exception in finding forfeiture appropriate. The court in *McLendon v. Safe Realty Corp.*, 401 N.E.2d 80, 83 (1980) described the circumstances under which this exception applied:

[F]or there to be an abandonment of a conditional land sales contract one must actually and intentionally relinquish possession of the land and act in a manner which is unequivocally inconsistent with the existence of a contract.

.    .    .    .    .

Furthermore *Skendzel* spoke of an "abandoning, *absconding* vendee." The word "abscond" means to hide, conceal, or absent oneself clandestinely with the intent to avoid legal process.

No evidence in the record demonstrates that the McCords intended to relinquish all title to the property or avoid legal process.

If forfeiture is justified, then, it is only because the second *Skendzel* exception is met. This requires that the vendee have paid only a minimum amount on the contract at the time of default. In this case, the district court concluded that "this is patently a situation contemplated by the court in *Skendzel* in which forfeiture is the logical and equitable remedy." However, the buyers in *Skendzel* had in fact paid more than a minimum amount on the contract and the court cited no examples of what would "patently" constitute a "mini-

mum amount." Rather, later Indiana cases have interpreted *Skendzel* as requiring a case by case analysis that examines the "totality of circumstances surrounding the contract and its performance." *Johnson v. Rutoskey*, 472 N.E.2d 620, 626 (Ind.App. 1984).

Here, while $123,280 was paid to the Looneys, the court considered all but $639.88 to be interest rather than a part of the contract price. The court equated contract price with what was paid to reduce principal and implicitly determined that all the interest owed had to be paid before principal would in any degree be reduced.

But nothing in Indiana law compels the district court's construction of payment on the contract. On the contrary, several Indiana courts have considered and given weight to both payments to reduce principal and those to reduce interest in determining whether a buyer falls within the second *Skendzel* exception. *See Morris v. Weigle*, 270 Ind. 121, 122, 383 N.E.2d 341, 342 (1978) ("At the time the Weigles repossessed the land, Morris had paid a total of $24,722.97 on the contract; of that amount $16,922.97 was principal and $7,800 was interest); *Oles v. Plummer*, 444 N.E.2d 879, 882 (Ind.App.1983) (looking at both payments made to reduce principal and payments to reduce interest to determine that 30.55% of the contract price had been paid and was not minimal); *Fisel v. Yoder*, 162 Ind.App. 565, 572, 320 N.E.2d 783, 788 ("the Yoders had paid a substantial portion of the contract price. At the time of trial, they had made a $10,000 downpayment, one $1,400 claim payment ... and two interest payments.") Here, the contract con-

templates the payment of interest. If interest payments are included in the calculus, the McCords paid almost 33%[1] toward the contract price rather than .26% as the court determined.

It is true that certain cases have looked solely at the reduction of principal to determine payment on the contract. But many of these cases have not had to include interest payments in their calculi because the interest paid was enough to justify foreclosure rather than forfeiture. *See Bartlett v. Wise*, 169 Ind.App. 125, 348 N.E.2d 652, 654 (1976) ("she had paid one-third of the principal amount due on the contract—certainly more than a 'minimal amount' "); *Tidd v. Stauffer*, 159 Ind.App. 570, 308 N.E.2d 415 (1974).

Even when no principal is paid, a buyer's stake in the property may be sufficient to justify foreclosure. As the court stated in *McLendon v. Safe Realty Corp.*, 401 N.E.2d at 83:

> We cannot say McLendon had paid a "minimal amount" on the contract at the time of default, giving him little if any equity in the property. The trial court found McLendon had no equity in the real estate as the principal owed under the contract and the accumulated real estate taxes exceeded the original contract price. However, "equity" in this context is the amount or value of the property above the liens and charges against it.

Here, two uncontested affidavits indicate the property to be worth over $200,000 more than the McCords owe the Looneys.[2]

---

1. The Looneys had paid $123,280. The district court determined that they still owed $249,-360.12. The contract therefore envisioned a combined payment of interest and principal of $372,640. The Looneys' payment was approximately one-third of this amount.

2. The Looneys submitted a request for admission to the government that stated that the McCords' equity in the property at the time the Looneys signed the Consent to Mortgage and Assignment was $9,394.30. The government did not respond to this document, which the Looneys contend makes the facts therein admitted as a matter of law. The government at oral

argument stated that it did not respond to the request because the McCords, fellow defendants, denied the fact in question. The court below does not appear to have considered the $9,394.30 figure in making its determinations. In any event, the equity in the property at the time the emergency loan was secured is irrelevant to the equity in the property at the time of the McCords' ultimate default. This is the equity that is important in determining whether foreclosure or forfeiture is more appropriate. The government's two uncontested affidavits suggest that at that time the buyers' equity was substantially more than $9,394.30.

With the evidence of appreciation, the court was incorrect to conclusively value the McCords' equity at only $639.88.

When the second *Skendzel* exception has been invoked it has frequently been because the vendee is contributing to a decline in the value of the security. As the court said in *Johnson v. Rutoskey*, 472 N.E.2d 620, 626, "the second *Skendzel* exception will be met only where the purchaser has paid a minimum amount *and* the vendor's security interest in the property has been endangered" (emphasis in original). Thus in *Goff v. Graham*, 159 Ind. App. 324, 337, 306 N.E.2d 758, 766 (1974), forfeiture was proper because not only had the vendees only made a down payment on the property but "[e]vidence indicated that the purchaser had committed waste and deliberately neglected the properties." There is no allegation or evidence of waste in this case.

Even the Looneys admit that the buyers "had paid substantial monies pursuant to the terms of the contract." (Appellee's Brief at 9). The Looneys received $123,280 and the McCords paid the necessary real estate taxes, insurance premiums and upkeep expenses for over six years. The Looneys make no showing that foreclosure would not satisfy their interest and the court below made no such determination. While foreclosure would appear to satisfy all parties' needs, forfeiture leaves the FmHA with a $639.88 recovery on a $183,-800 loan.[3] In view of the "totality of circumstances" this result seems inequitable and unnecessary. The judgment of the district court is therefore REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

**3.** The Looneys argue that the government accepted this consequence when it failed to pay off the McCords' debt as it could have done. While assuming the McCords' payments may have saved the government this litigation and may have been a more appropriate course of action, this assumption of payments was not necessary under all the circumstances to preserve the right to judicial foreclosure. Of course, if the government were strongly convinced of the appreciation in value of the land, it might have been expected to assume the McCord's payments.