FRANKLIN BANK AND TRUST COM-PANY, n/k/a Ameritrust Bank, Johnson County, Appellant (Defendant),

v.

Alfred MITHOEFER, Agent, Appellee (Plaintiff).

No. 73A01–8911–CV–449.

Court of Appeals of Indiana, First District.

March 29, 1990.
Rehearing Denied May 17, 1990.

Stephen L. Huddleston, Lori A. Torres, Franklin, for appellant.

Thomas D. Titsworth, John M. Rogers, Bamberger & Feibleman, Indianapolis, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Franklin Bank and Trust Co. (Bank) appeals the decision of the trial court holding that Alfred Mithoefer's (Mithoefer) landlord's lien placed on certain crops grown by a now bankrupt tenant farmer was valid and had priority over the Bank's unperfected security interest in the same crops. We affirm in part, reverse in part, and remand for proceedings consistent with our instructions.

## FACTS

On January 29, 1985, Richard Snepp executed a promissory note in the amount of $227,333.39 in favor of the Bank. A security agreement was also executed and listed as collateral:

"all growing crops or grain but not limited to 333.25 acres corn, 192 acres soybeans, and 32.75 acres Government Program and/or harvested and/or stored."

Record at 93. A financing statement reflecting the Bank's interest in Snepp's crops was filed in the office of the Shelby County Recorder on March 18, 1985. However, the real estate description contained therein was inadequate to identify the property which was the subject of the financing statement. The Bank admits that despite this filing, because of the defective description, the Bank did not perfect its security interest in the crops grown by Snepps.[1]

On February 18, 1985, Snepp entered into a written "crop paid as rent" agreement with Mithoefer whereby Snepp agreed to pay Mithoefer cash for the use of certain tracts of pasture land, service buildings, equipment, and a dwelling. In addition, rent for the tillable land was to be paid as follows: 42 bushels of corn for every acre planted in corn, and 18 bushels of soybeans for every acre planted in soybeans. As for tillable land left unplanted pursuant to government agricultural programs, the rental agreement provided as follows:

"The extent of participation in government programs will be discussed and decided on an annual basis. The course of action agreed upon shall be placed in writing and be signed by both parties."

Record at 9.

On July 15, 1985, Snepp filed Chapter VII Bankruptcy proceedings and was discharged from all debts. Neither the Bank nor Mithoefer were involved in those proceedings. During the bankruptcy, Snepp and the bankruptcy trustee disclaimed any interest in the 1985 crops planted by Snepp on Mithoefer's property.

On August 21, 1985, Mithoefer filed a Notice of Intent to hold a landlord's lien on the crops planted by Snepp in Mithoefer's fields in 1985. The lien was filed to secure payments due pursuant to the February, 1985, "crops paid as rent" agreement. Un-

---

1. IND.CODE § 26–1–9–303(1).

der the lien, Mithoefer claimed that he was entitled to 42 bushels of corn per acre from the 123.7 acres planted with corn, 18 bushels of soybeans per acre from the 109.4 acres planted with soybeans, 42 bushels of corn per acre for the 4.5 acres of tillable land left idle by Snepp, and 42 bushels of corn per acre of tillable land set aside pursuant to a program instituted by the Amerana Stabilization and Conservative Service (ASCS), a government agricultural program. Mithoefer also claimed that $5,463.75 in cash rents remained unpaid.

Pursuant to an agreement reached between Mithoefer and the Bank, the 1985 crops were harvested and stored. At the time of trial $33,524.53 in proceeds from the sale of these crops was held in an escrow account at the American Savings Bank and 6,029.14 bushels of corn were still in storage. Also the Shelby County division of the ASCS issued a check for the 1985 crop season for the Mithoefer farm in the amount of $3,031.29.

On January 10, 1989, the trial court held that Mithoefer's landlord's lien was valid and, as a matter of law, had priority over the Bank's admittedly unperfected security interest. A hearing on the amount of damages to be awarded was held on May 10, 1989. At this hearing Mithoefer relied on the lien notice and affidavits to establish the amount of the lien and introduced evidence regarding the amount of money presently held in the escrow account. The Bank failed to present evidence. The trial court awarded Mithoefer damages totaling $41,437.08 for unpaid cash rents, profits from the sale of corn and soybeans, and attorney fees to be paid from the monies on deposit in the America Savings Bank and from the ASCS check issued to cover the Mithoefer farm in 1985. From this judgment, the Bank now appeals.

## ISSUES

Because we reverse, we address only the following two issues:

1. Whether a creditor not a party to a bankruptcy proceeding has the standing to question the validity of a landlord's lien created during the pendency of that bankruptcy proceeding in alleged violation of the bankruptcy code's automatic stay provision.

2. Whether an unperfected security interest created prior to a valid landlord's lien has priority over that landlord's lien.

## DISCUSSION AND DECISION

We first note that the Bank is appealing from the grant of summary judgment in favor of Mithoefer on the issue of the priority of the parties' claims to the proceeds from the 1985 crops planted by Snepp. Because issues one and two are both related to the question of priority of the parties' claims, both issues shall be decided under the standard applicable to the review of summary judgments. When presented with a challenge to the trial court's ruling on a motion for summary judgment our standard of review is well settled: "We consider the contents of the pleadings, affidavits, answers to interrogatories, responses to requests for admissions, and depositions in a light most favorable to the non-moving party to determine whether any genuine issue of fact exists, and whether the moving party is entitled to judgment as a matter of law." *Watson Rural Water Co. v. Indiana Cities Water Corp.* (1989), Ind.App., 540 N.E.2d 131, 132 *trans. denied.*

## ISSUE ONE

■ The Bank first contends that Mithoefer's landlord's lien [2] was invalid because it was created during the pendency of Snepp's bankruptcy proceeding. Under federal bankruptcy laws, the filing of a bankruptcy petition triggers an automatic stay of most actions to enforce a lien against the debtor. 11 U.S.C. § 362; *In re Brooks* (9th Cir.1989), 871 F.2d 89, 90. That stay extends to "any act to create, perfect, or enforce against property of the

2. Mithoefer's landlord's lien was created pursuant to IC 32–7–1–18 which enables a landlord to obtain a lien on crops raised on the landlord's property if a tenant on that property fails to pay

an agreed upon rent, be it in cash or kind. *See Farm Bureau Co-op v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, 195–196.

debtor any lien to the extent that such a lien secures a claim that arose before the commencement of the case." 11 U.S.C. 362(a)(5). The Bank claims, and Mithoefer concedes, that Mithoefer's landlord's lien was filed after the bankruptcy petition was filed, and related to a debt which arose before the commencement of the case. Acts which are taken in violation of the automatic stay provision are deemed void and without effect. *Renges, Inc. v. PAC Financial Corp.* (1987), Ind.App., 515 N.E.2d 563, 565–66. Therefore, according to the Bank, Mithoefer's landlord's lien should be deemed void. The Bank is mistaken.

■ As noted by Mithoefer, the automatic stay provision of the bankruptcy code was enacted solely for the benefit of the debtor's estate. *See In re Globe Investment and Loan Co.* (9th Cir.1989), 867 F.2d 556, 559. Therefore, according to Mithoefer, the Bank lacked standing to assert a violation of the automatic stay provision. We agree.

The present situation is similar to that faced by the United States Court of Appeals in the case of *In re Brooks*. In that case a husband and wife were loaned approximately $60,000 by a local bank. *Id.* The local bank secured the loan by deed of trust on the couple's property. *Id.* The deed was recorded on October 3, 1984. *Id.* On June 3, 1985, the husband petitioned for bankruptcy. *Id.* On June 5, 1985, after discovering the property description on the original deed was defective, the bank rerecorded a corrected deed. *Id.* The wife filed bankruptcy on January 6, 1986. *Id.* The trustee of her bankruptcy estate challenged the local bank's deed of trust, claiming that the deed was void because it was filed in violation of 11 U.S.C. § 362.

The court of review affirmed the trial court's conclusion that the trustee of the wife's bankruptcy estate lacked standing to challenge the validity of the deed due to an alleged violation of the automatic stay provision. *Id.* at 90. The court noted that:

"Mrs. Brooks' [wife] trustee claims that the rerecording violated .the automatic stay imposed when *Wiley* Brooks [husband] filed for bankruptcy. As discussed, the stay was imposed for the benefit of the debtor of that estate and its creditors. However, the trustee of Mrs. Brooks' estate is not asserting that Mrs. Brooks was a creditor of Mr. Brooks' bankruptcy estate or that she joined in his petition under 11 U.S.C. § 302 so as to become a joint debtor of the estate." (emphasis in the original) *Id.* Therefore,˙ because the wife was neither a debtor or creditor of the bankruptcy estate, the wife lacked the standing to challenge the deed of trust as being void under 11 U.S.C. § 362.

Similarly in *Globe Investment,* thwarted property owner's suing not in their capacity as creditors of the bankruptcy estate, but rather as co-owners in certain real estate who were seeking clear title to the subject property, were found to lack standing to attack a foreclosure which was in violation of the bankruptcy code's automatic stay provision. *Globe Investment,* 867 F.2d at 560. In *Globe Investment,* the court of review appeared to be particularly offended by the property owners' "disingenuous attempt to use the Bankruptcy Code to their advantage." *Id.* The court of review noted that the legislative history behind the automatic stay provision indicates that this provision was intended to protect only the debtor and to assure equal distribution among creditors of the bankruptcy estate. *Id.* In *Globe Investment* the property owners attempted to use the stay provision of the bankruptcy code against the debtor's estate and in favor of their own interests in flagrant violation of the provision's intended purpose. *Id.* Therefore, the court found that the property owners lacked standing to challenge the foreclosure based on a violation of the automatic stay provision. *Id.*

As in *Brooks* and *Globe Investment,* the challenging party in the present case is not a creditor of the bankruptcy estate,[3]

---

**3.** We need not decide whether creditors of a bankruptcy estate may invoke the protections of the automatic stay provision to assure the equal distribution of assets among creditors.

and is definitely not challenging the landlord's lien on the debtor's behalf.[4] Therefore, we hold that the Bank did not have standing to challenge the validity of Mithoefer's landlord's lien based on the violation of the automatic stay provision of the bankruptcy code. *See also In re Stivers* (N.D.Cal.1983), 31 B.R. 735, ("[A]utomatic stay provided by 11 U.S.C. § 362 operates in favor of debtors and estates (represented by trustees and debtors-in-possession) only and ... gives junior lienholders and other parties interested in the property affected by the automatic stay no substantive or procedural rights"); *In re Fuel Oil Supply and Terminaling, Inc.* (N.D.Tex.1983), 30 B.R. 360, 362. (Automatic stay is for benefit of debtor; if debtor chooses to ignore stay violations, other parties cannot use such violations to their advantage). Having determined that the Bank lacked standing to challenge the validity of the landlord's lien based on a violation of the automatic stay provision, we cannot hold that such a lien was invalid on that basis. The trial court's determination that the landlord's lien was valid is affirmed.

ISSUE TWO

The Bank next argues that even if Mithoefer's landlord's lien is not deemed invalid by virtue of having been recorded during the pendency of Snepp's bankruptcy proceeding, the trial court erred in determining that the landlord's lien had priority over the Bank's unperfected secured interest in the 1985 crops.

■ This court once before has had the opportunity to review a situation very similar to that presently before us. *See Peoples State Bank v. Thompson* (1984), Ind. App., 462 N.E.2d 1068. In *Thompson*, a bank appealed a trial court's determination that a landlord's lien filed pursuant to IC 32–7–1–18 held priority over a Bank's se-

cured interest in the tenant's crops. *Id.* at 1072. In determining whose claim had priority, this court noted that IND. CODE § 26–1–9–104 specifically excludes landlord's liens from coverage under Article 9 of the Uniform Commercial Code (UCC). *Id.* at 1070. We then noted that some jurisdictions hold that cases involving a determination of the priority between a lien and a security interest must be determined by pre-code laws. *Id.* This court held that under pre-code law the first encumbrance properly filed would take priority. *Id.* at 1071. The purpose of a statute requiring a recording is to give persons subsequently dealing with encumbered property notice of the existence of a prior interest in that property. *See Lincoln National Bank and Trust Co. v. Nathan* (1939), 215 Ind. 178, 189, 19 N.E.2d 243, 248, 66 Am.Jur.2d *Record and Recording Statutes* § 47 (1973). Therefore, any recording which is insufficient to provide such notice is ineffective.

■ In the present case, the Bank's secured interest was first recorded on March 18, 1985. However, as the Bank concedes, this financing statement contained an inadequate description of the subject property. Therefore, for purposes of providing notice to those later dealing with the property, the March 18, 1985, financing statement was inadequate. Mithoefer's landlord's lien was properly filed on August 21, 1985. Therefore, it would appear that under the pre-code law as espoused in *Thompson*, Mithoefer's landlord's lien had priority over the Bank's secured, but unperfected, interest in the 1985 crops.[5]

However, as stated previously the purpose of the recording requirement is to provide notice to those subsequently dealing with the property. Unlike the record in

---

**4.** We note that, unlike the situation in *Globe Investment*, in the present case the automatic stay provision is not being used against the debtor's estate. Rather, like the challengers in *Brooks*, the Bank herein did not attempt to invoke the automatic stay provision to the debtor's detriment. Therefore, we hold that while the added factor of causing detriment to the debtor by invoking a provision meant to protect that debtor no doubt worked against the chal-

lengers' claim for standing in *Global Investment*, such an aggravating factor is not necessary to find a lack of standing.

**5.** Also note that under Ind.Code § 26–1–9–312, applied here by analogy, the landlord would gain priority because the Bank's security interest was not perfected until after Mithoefer's landlord's lien was filed.

*Thompson*, the record in the present case discloses that a material issue of fact exists as to whether Mithoefer possessed actual knowledge of the Bank's secured interest in the 1985 crops prior to filing the landlord's lien in August. As Judge Robertson stated in *Thompson*, "despite exclusion of the landlord's lien from the UCC some jurisdictions have held that the priorities of a UCC security interest and a landlord's lien should be determined under UCC rules." *Thompson*, 462 N.E.2d at 1072. Judge Robertson went on to note that under IND. CODE § 26–1–9–301, unperfected security interests are subordinate to the right of a lien creditor who becomes such without the knowledge of a prior secured interest and before it is perfected.[6] *Id.; see also* (by analogy) IND. CODE § 32–1–2–16; 66 Am. Jur.2d *Records and Recording Statutes* § 186 (1973) ("It has been suggested that the purpose of recording laws is to secure subsequent purchasers and encumbrancers against prior secret conveyances and fraudulent encumbrances; and that this purpose is inapplicable where the person to be protected has actual knowledge of the prior instrument.")

In the present case, Mithoefer filed the landlord's lien only after he received notice of Snepp's pending bankruptcy. As stated previously, unlike the record in *Thompson*, the record in the present case tends to reveal an issue of fact as to whether Mithoefer knew that the Bank was claiming an interest in the 1985 crops as a result of Snepp's bankruptcy. It is our opinion that if Mithhoefer had knowledge of the Bank's interest in the crops at the time the landlord's lien was filed, the Bank's failure to include an adequate description on its financing statement was of no consequence. Again, we stress the purpose of a filing is to provide notice. Where that purpose appears not to have been frustrated despite a defective filing, it would be illogical to use such a defect as a means to defeat the validity of the filer's claim.

**6.** I.C. 26–1–9–301 no longer provides that the lien creditor not have knowledge of the security interest. We do not venture an opinion as to

 Under I.C. 32–7–1–18 a properly filed landlord's lien has priority over only those liens "suffered or created" after the landlord's lien is filed. In the present case it is clear that the Bank's security interest existed prior to the Mithoefer's landlord's lien and it appears entirely possible that Mithoefer knew about the Bank's interest in the 1985 crops when the landlord's lien was filed. It is our opinion that the issue of whether Mithoefer actually knew of the Bank's secured interest prior to filing the landlord's lien is an issue better left to the trier of fact; and given that there is a question of material fact to be determined in this case, we reverse the trial court's entry of summary judgment in favor of Mithoefer and remand for further proceedings.

Affirmed in part, reversed in part and remanded.

BAKER and MILLER, JJ., concur.

what result would be reached in the present case under the current provisions of the UCC.